UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: | : |
| MARC G. BEAUDOIN, | : |
| Debtor. | : |
| ----- | : |
| CADLEROCK JOINT VENTURE II, L.P. and JOHN J. O'NEIL, TRUSTEE, | : CIVIL ACTION<br>: NO. 3:07CV646 (MRK) |
| Plaintiffs, | : |
| v. | : |
| MARC G. BEAUDOIN and LORETTA I. BEAUDOIN, | : |
| Defendants. | : |

## RULING AND ORDER

Appellant CadleRock Joint Venture II, L.P. ("CadleRock") filed this appeal from a final decision of the United States Bankruptcy Court for the District of Connecticut (Krechevsky, J.), rendering judgment in favor of Defendants Marc and Loretta Beaudoin on all of CadleRock's claims. *See CadleRock v. Beaudoin* (*In re Beaudoin*), No. 02-22859, 2007 WL 1020787 (Bankr. D. Conn. Mar. 30, 2007). For the reasons that follow, the Court VACATES the Bankruptcy Court's judgment and remands the case to the Bankruptcy Court for further proceedings consistent with this opinion.

**I.**

The facts relating to this case "concern[] a number of interrelated transactions over a period of seventeen years in regard to three parcels of property," *id.* at *1, and they are recited in detail in the Bankruptcy Court's decision, familiarity with which is assumed. For purposes of this Ruling, this

Court will repeat only the few facts relevant to one parcel, located at 278 Corbin Avenue, New Britain, Connecticut (the "Corbin Avenue property"). Until July 31, 1995, the Corbin Avenue property was owned by Mr. Beaudoin, who had acquired it from his parents before his marriage to Ms. Beaudoin. On July 31, Mr. Beaudoin transferred title to the Corbin Avenue property to his wife, and soon after, the couple and their two children, moved into that residence and used it as their sole residence. At the time of the transfer, Mr. Beaudoin was in debt and had defaulted on certain tax and other municipal obligations relating to other properties he then owned. The Bankruptcy Court found that as consideration for the transfer, Ms. Beaudoin took out a mortgage on the Corbin Avenue property in the amount of $85,000, most of which was used to repay debts then owed by Mr. Beaudoin and/or for his benefit, although a portion of the $85,000 went to pay off a mortgage in which Ms. Beaudoin was a co-obligor with her husband.

Even though after July 31, the title and mortgage on the Corbin Avenue property was solely in Ms. Beaudoin's name, Mr. Beaudoin made all of the payments on the mortgage (as he had done when the property was in his name), and he did so principally from his checking account. In addition, Mr. Beaudoin made tax, insurance and utility payments for the Corbin Avenue property,[1] and he twice applied for building permits for the property, in which he referred to himself (once under oath) as the "owner" of the Corbin Avenue property. Mr. Beaudoin also did maintenance work on the property and made improvements to it, although the evidence appeared to show that the materials used in the improvements were paid for out of a savings account in Ms. Beaudoin's name. Nonetheless, it is undisputed that Ms. Beaudoin's savings account included money that was Mr.

---

[1] The Bankruptcy Judge's decision makes reference only to the mortgage and utility payments, *see id.* at *3, but both parties agree that Mr. Beaudoin also made tax and insurance payments. See Appellant's Brief [doc. # 15] at 25; Appellee's Brief [doc. # 20] at 10.

Beaudoin's. *See* Appellant's Brief [doc. # 15] at 18-19; Appellee's Brief [doc. # 20] at 12. Finally, in the proceedings below, Mr. Beaudoin testified that he considered himself to be an owner of the Corbin Avenue property. *See* Record of Appeal, Ex. 4 (Transcript of Hearing Held on Nov. 29, 2006), at 180:13-14.

On October 2, 2002, Mr. Beaudoin filed a Chapter 7 bankruptcy petition. On February 6, 2003, CadleRock and John J. O'Neil, Jr., in his capacity as Chapter 7 Trustee (the "Trustee"), filed a five-count complaint against the Beaudoins, seeking "in the first count, to impose a constructive trust on property owned by Loretta; a judgment, in the second count, against Loretta based on unjust enrichment; and, in the remaining three counts, denial of the debtor's discharge pursuant to Bankruptcy Code §§ 727(a)(2)(A), 727(a)(2)(B), and 727(a)(4)(A)." *In re Beaudoin*, 2007 WL 1020787, at *1.

Following a two-day trial in which Mr. and Ms. Beaudoin, among others, testified, the Bankruptcy Court ruled in favor of the Beaudoins on all counts. The court refused to impose a constructive trust and found that Ms. Beaudoin was not unjustly enriched by the transfer because she had provided adequate consideration for the Corbin Avenue property. The Bankruptcy Court also found that Mr. Beaudoin did not retain an undisclosed interest in the Corbin Avenue property as required by § 727 of the Bankruptcy Code, because the Beaudoins shared household expenses. Even though Mr. Beaudoin had made all of the mortgage, tax, insurance and utility payments, and performed significant work on the Corbin Avenue property, the Bankruptcy Court concluded that those payments and work constituted "part of his contribution towards household expenses," *id.* at *6, and that Ms. Beaudoin's share of those household expenses consisted of payment for expenses relating to the family's "food, health insurance, day care, car payments, clothing, etc." needs. *See id.*

3

The Bankruptcy Court further found that the fact that Mr. Beaudoin signed the building permits as "owner," did not indicate that he retained an ownership interest, because the judge credited Mr. Beaudoin's testimony that he did so to avoid certain regulatory obligations to which non-owners of property must adhere. Having found that Mr. Beaudoin did not retain an interest in the Corbin Avenue property, the Bankruptcy Court concluded that he did not conceal assets from his creditors in violation of §§ 727(a)(2)(A) or 727(a)(2)(B) of the Bankruptcy Code, or make a false oath by not listing an interest in the Corbin Avenue property in his bankruptcy schedules in violation of § 727(a)(4)(A).

## II.

A district court "reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact under a 'clearly erroneous' standard." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 332 B.R. 514, 517 (D. Conn. 2005) (citing *Duplan Corp v. Esso Virgin Islands, Inc. (In re Duplan Corp.)*, 212 F.3d 144 (2d Cir. 2000)); *accord Smith v. Geltzer (In re Smith)*, – F.3d –, 2007 WL 3243846, at *4 (2d Cir. 2007). "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). The Bankruptcy Court's decision to allow Mr. Beaudoin a discharge over CadleRock's objection presents a mixed question of law and fact. *See In re Cacioli*, 332 B.R. at 517. "Assuming a bankruptcy court correctly applied proper legal precepts when making its 727(a)(3) determination, and that the court's basic and inferred factual findings were not clearly erroneous, the bankruptcy court's ultimate determination should be affirmed absent an abuse of discretion." *Id.* at 518 (citing *Zervos*, 252 F.3d

at 169) (holding that the bankruptcy court abuses or exceeds its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.").

## III.

In the course of rejecting CadleRock's argument that Mr. Beaudoin had retained an interest in the Corbin Avenue property after the transfer of title to Ms. Beaudoin, the Bankruptcy Court made the following statement: "The facts and circumstances described by both the plaintiffs and the defendants do not support an *inference* that the debtor retained any property interest in assets which he concealed for the purpose of hindering, delaying, or defrauding creditors." *In re Beaudoin*, 2007 WL 1020787, at *6 (emphasis added). CadleRock contends that this statement is an incorrect statement of governing law because the circumstances of this case do, in fact, give rise to an inference of a retained interest. It is unclear to this Court (and was unclear to counsel for each party at oral argument) whether the foregoing statement merely represents the Bankruptcy Court's overall assessment of and conclusion regarding all of the facts and circumstances of the case—that is, a factual finding—or instead whether it reflects the Bankruptcy Court's understanding of the relevant legal principles governing this case. Because of this lack of clarity, the Court believes that it is most appropriate to remand the case to the Bankruptcy Court for clarification.

Bankruptcy case law is clear that the presence of certain factors—many of which are present in this case—do give rise to an inference of a retained interest. For instance, in *Keeney v. Smith (In re Keeney)*, 227 F.3d 679 (6th Cir. 2000), the debtor purchased two properties in his parent's names, but made all the mortgage and note payments on the home, lived in it, and paid no rent.

5

Faced with this scenario, the bankruptcy judge denied discharge, finding that the debtor had concealed a beneficial interest in the property. Both the district court and Sixth Circuit affirmed. In its decision, the Sixth Circuit stated, "[a] beneficial interest of ownership in the property can be *inferred* . . . from [the debtor's] payment for and use of the properties, including his rent-free residence on each and payment of all mortgage obligations." *Id.* at 683-84 (emphasis added).

Similarly, many other courts have concluded that the presence of certain factors are strong indicators of a retained interest, even if those courts did not use the word "inference." For example, in *Rhode Island Depositors Econ. Prot. Corp. v. Hayes (In re Hayes)*, 229 B.R. 253 (B.A.P. 1st Cir. 1999), the debtors, anticipating substantial liability, transferred title to their residence and an interest in an apartment to a trust for which their son was the beneficiary. The transfers were made without consideration, and the debtors continued to enjoy free use of the residence, paid mortgage, real estate taxes, and utility charges on that property, borrowed funds secured by both properties, and represented themselves as owners of the properties. As in *In re Keeney*, the bankruptcy judge denied discharge, finding that the debtor retained a secret interest in the property. In affirming, the Bankruptcy Appellate Panel for the First Circuit explained:

> [T]ransfer of legal title to the trust for no consideration while continuing the status quo in all other respects—presents a *classic example* of desperate debtors' attempts to have their cake and eat it too, while denying any piece to pressing creditors. It is *decorated with all the marks of the fraudulent retention* of a secret property interest.

*Id.* at 260 (emphasis added). Also, in *Rosen v. Bezner (In re Rosen)*, 996 F.2d 1527 (3d Cir. 1993), the Third Circuit affirmed a denial of discharge where a debtor transferred title in real property to his wife for no consideration, but continued to live in the residence and make mortgage payments on the property. The court noted that "retention of the benefits of ownership is evidence tending to

6

show that [a debtor does] retain a secret interest pursuant to an express or tacit agreement with his wife . . . ." *Id.* at 1532; *see id.* at 1532 n.5 ("We agree that in many cases evidence that the debtor retained the benefits of ownership and continues to use the property as his own *will be sufficient to prove concealment.*") (emphasis added).

In *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550 (5th Cir. 1987), a debtor, following a car accident that injured the plaintiff, transferred title to his home to his mother for little or no consideration. However, the debtor and his family continued to live in the house and were responsible for all costs associated with the property. The Fifth Circuit affirmed the lower courts' findings that the debtor concealed a retained interest:

> [T]he [debtor's] motivation, their continuing occupancy of the house rent-free, their prompt return of all the purchase money, and their acts of ownership such as insuring and maintaining the property taken together *amply support* the conclusion that notwithstanding the purportedly complete transfer they retained a significant beneficial interest in the property and have continued to use the property as their own.

*Id.* at 554 (quotation marks and alterations omitted) (emphasis added). In *Friedell v. Kauffman (In re Kauffman)*, 675 F.2d 127 (7th Cir. 1981), the Seventh Circuit affirmed a finding of a secret interest where the debtor transferred title to his wife, lived in the house, made mortgage, tax, and insurance escrow payments, used the property as collateral for personal loans, and listed the property on his personal financial statement. According to the Seventh Circuit, such "evidence was sufficient to show [that the debtor] retained a beneficial interest in the property . . . ." *Id.* at 128. In *Anderson v. Hooper (In re Hooper)*, 274 B.R. 210, 216 (Bankr. D. S.C. 2001), the bankruptcy court described the payment of taxes and insurance on a property as "indicators of beneficial ownership" and noted that "[c]ourts have found a secret interest in a variety of situations, but the typical scenario is where,

7

after transferring the property, the debtor continues to live on the property and makes mortgage, tax, and or insurance payments." *See also Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657 (Bankr. E.D.N.Y. 1993) ("When a debtor makes all mortgage, insurance, and maintenance payments on and lives in property owned by another, he may be found to have fraudulently concealed his interest by maintaining the property in the other's name."); *Sacklow v. Vecchione, (In re Vecchione)*, 407 F. Supp. 609, 614-15 (E.D.N.Y. 1976) (reversing bankruptcy judge's finding that debtors did not conceal retained interests where debtors transferred money and property to their wives but continued to enjoy equitable use, and wives had no earnings but retained surplus of their husband's earnings after paying household expenses); *cf. EFA Acceptance Corp. v. Cadarette (In re Cadarette)*, 601 F.2d 648, 651 (2d Cir. 1979) ("The retention of the use of transferred property very strongly indicates a fraudulent motive underlying the transfer.").

The facts in this case show that Mr. Beaudoin transferred title to the Corbin Avenue property to his wife at a time when he was in debt, that he continued to make mortgage, tax, insurance and utility payments on that property even after the transfer, that he provided labor (and perhaps materials) for substantial maintenance and improvement work on the house, and that he considered himself to be an "owner" of the property and had represented himself as such on two occasions (once under oath). Ms. Beaudoin also testified that the Corbin Avenue property was intended to fund her and her husband's retirement. *See* Record of Appeal, Ex. 5 (Transcript of Hearing Held on Dec. 7, 2006), at 52:1-10. The presence of these factors would appear to warrant an inference that Mr. Beaudoin retained an interest in the Corbin Avenue property.

Other factors may strengthen the inference. For example, in this case, it appears that prior to the 1995 transfer, the Beaudoins paid for their individual mortgages out of their individual

accounts. That is, each spouse paid the mortgage that was in the spouse's name. However, after the transfer, Mr. Beaudoin continued to pay the mortgage on the Corbin Avenue property even though that mortgage was now in his wife's name. To the Court's knowledge, the Beaudoins never explained why they decided to change their prior practice and the Bankruptcy Court never explained when the Beaudoins adopted their asserted practice of dividing responsibility for household expenses in the manner they did.

Any such inference would be even further strengthened where the debtor also pays for maintenance and improvement work done on the property. Here, as noted, the Bankruptcy Court found that although Mr. Beaudoin provided the labor for maintenance work and improvements, the payments for materials related to that work came from an account that was in Ms. Beaudoin's name. However, it appears that at least some of the money in Ms. Beaudoin's savings account came from Mr. Beaudoin or from monies he was owed. The Bankruptcy Court did not make any specific findings regarding what portion of the funds in Ms. Beaudoin's savings account came from Mr. Beaudoin.

That said, whether a debtor retained a secret interest in a property is ultimately a factual question to be decided based on the totality of circumstances. *See In re Rosen*, 996 F.2d at 1532. Therefore, any inference of a retained interest that may arise from certain facts—even if the inference is strong—is nonetheless rebuttable. To that end, cases discussing retained interests have recognized that a debtor may advance convincing explanations to overcome any inference of a retained interest. For instance, in *In re Keeney*, in affirming the lower courts' finding that the debtor retained an interest, the Sixth Circuit noted that the debtor failed to provide an explanation as to why the property was titled in his parent's names so as to rebut the inference of a retained interest. *See In re*

9

*Keeney*, 227 F.3d at 684. Similarly, in *In re Rosen*, the court found that, although the markers of a retained interest were present, summary judgment was inappropriate because other facts could emerge at trial. The court explained that "[i]n some circumstances, it may be that even though the debtor continues to use the property, he no longer has any right to do so having transferred away all of his interest." *In re Rosen*, 996 F.2d at 1532 n.5.

*United States v. Edwards*, 572 F. Supp. 1527, 1535-36 (D. Conn. 1983)—though an IRS fraudulent conveyance case—also makes clear that an inference of a retained/continuing interest can be rebutted. In that case, a husband conveyed his property to his wife for inadequate consideration, continued to reside in the property, helped with repairs and maintenance, signed a contract for repairs and mortgages on the home, and may have used a portion of his post-transfer salary to meet mortgage payments on the property. Nonetheless, Circuit Judge Thomas Meskill (sitting by designation) found that the defendant did not have a continuing interest in the property because there were alternative explanations. The court found that the factual record demonstrated that the husband, who had credit, initially purchased the house in his name for mortgage loan purposes, but made the down payment using money obtained from a gift from his wife's father, which the father gave on the condition that title would be taken in the wife's name. Thus, the couple understood that the house would eventually be transferred to the wife's name. The court also noted that the fact that the husband lived in the home and helped with repairs and maintenance "indicates nothing more than a desire to provide his family with a comfortable and safe home." *Id.* at 1536. That the husband had signed a contract for repairs also did not necessarily indicate that he believed that he still had an interest in the property because the wife was unemployed and had no independent income, which might have been required by the contractor. *See id.* Finally, the court noted that even though the

husband's salary may have been used to meet mortgage payments, that fact did not indicate fraudulent intent, but rather represented the husband's contribution toward family expenses. *See id.* Thus, the court concluded, the husband did not have a continuing interest in the home.

In this case, the Bankruptcy Court pointed to the adequacy of consideration (a factor notably missing in many of the cases cited above), the debtor's explanation for the two building permit applications, and the way in which the debtor and his wife shared household expenses, as favoring the absence of a retained interest. It may be that the court found that these factors were sufficient to rebut any inference of a retained interest that arose from the other circumstances described above. However, it is not possible for this Court to decide whether that is what the Bankruptcy Court did, or whether, as CadleRock claims, the court erred in articulating the governing legal principle. Since, ultimately the conclusion regarding a retained interest is an issue of fact, it is sensible and most appropriate to remand this matter to the Bankruptcy Court so that it can clarify its ruling.

Furthermore, since this case is being remanded for reconsideration of the retained interest issue, it also is appropriate to note that even if a debtor has retained an interest in property, §§ 727(a)(2)(A) and 727(a)(2)(B) also require a showing that the debtor concealed the retained interest with an intent to hinder, delay or defraud. *See* 11 U.S.C. § 727(a)(2). "What is critical under the concealment provision of § 727(a) is whether there is concealment of *property*, not whether there is concealment of a transfer." *In re Rosen*, 996 F.2d at 1532; *accord In re Vecchione*, 407 F. Supp. at 616-17 ("The inquiry [on concealment] is not whether creditors were misled in relying on assets the bankrupts purported to own but, rather, whether the bankrupts have concealed from the trustee assets in which they retain equitable interests."); *In re Hayes*, 229 B.R. at 261 ("[A] correct application of § 727(a)(2)(A)' s concealment element must focus on [a] debtor's wrongful conduct,

11

rather than on the extent to which creditors are successfully misled.").

In this case, it is unclear to this Court whether the Bankruptcy Court made an independent determination on intent to hinder. In fact, at oral argument, counsel for each party asserted that the Bankruptcy Court made no such independent finding. Since this matter is being remanded, the Bankruptcy Court should consider whether it would be useful, in order to better facilitate what appears to be an inevitable appeal, for the court to make findings of fact on intent to hinder independent of any ruling on a retained interest, since CadleRock must establish both elements in order to prevail.[2] Therefore, on remand, the Court urges the Bankruptcy Court to consider making findings, in the alternative, on the intent to hinder element, regardless of its ruling on a retained interest.

A final issue remains, and it relates to CadleRock's unjust enrichment claim as well as its constructive trust count, which relies on the contentions underlying the unjust enrichment claim.[3] CadleRock does not argue that the Bankruptcy Court applied the incorrect legal standard. Instead, CadleRock contends that the Bankruptcy Court erred in finding that Ms. Beaudoin gave adequate

---

[2] At trial below, there was testimony that Mr. Beaudoin may have acted on the advice of counsel in not listing the Corbin Avenue property. This fact might suggest an absence of intent to hinder. However, the Bankruptcy Court also suggested that an intent to hinder might be negated by the fact that Centerbank (CadleRock's assignor) initiated the idea of the transfer to Ms. Beaudoin and provided the initial mortgage needed to effectuate it. In this regard, the Court notes that in *In re Olivier*, a case that is not discussed by the Bankruptcy Court, the Fifth Circuit described a similar argument as "an immaterial distinction." *In re Olivier*, 819 F.2d at 553.

[3] "The issue raised by a claim for a constructive trust is, in essence, whether a party has committed actual or constructive fraud or whether he or she has been unjustly enriched." *Stornawaye Props., Inc. v. O'Brien*, 94 Conn. App. 170, 176 (2006) (quotation marks omitted). Noting this rule, the Bankruptcy Judge rejected the trustee's argument that the transfer of the Corbin Avenue property was a fraudulent transfer under Connecticut's Uniform Fraudulent Transfer Act, and then went on to find that Ms. Beaudoin was not unjustly enriched. *See In re Beaudoin*, 2007 WL 1020787, at *4-*5.

consideration for the Corbin Avenue property, which, in this instance, is the crux of the unjust enrichment analysis.

As the Bankruptcy Court found, in consideration for the Corbin Avenue property, Ms. Beaudoin took out an $85,000 mortgage in her own name. Moreover, an appraisal submitted in the bankruptcy proceedings showed that $85,000 was the fair value of the Corbin Avenue property at the time of the transfer. The Bankruptcy Court found that the proceeds of the $85,000 mortgage were used as follows: (A) $39,571.85 to pay off Mr. Beaudoin's two mortgages on the Corbin property; (B) $9,452.89 to pay miscellaneous costs (water, sewer, taxes, closing costs) associated with the transfer of the Corbin Avenue property; (C) $20,000 to Mr. Beaudoin's parents, which, as CadleRock argues, appears to have been a gift by Mr. Beaudoin to his parents; and (D) $15,230.58, which was used to cover a shortfall in closing costs for another property, the Ridgewood Street property. The Ridgewood Street property was co-owned by Mr. and Ms. Beaudoin and they owed the balance on a $40,000 mortgage used to fund renovations to another property, the Linsley Avenue property, owned by Mr. Beaudoin. Thus, the Bankruptcy Court found that the total amount provided as consideration was at least $84,255.32.

CadleRock contests attribution of the full $15,230.58 on the Ridgewood Street property to Mr. Beaudoin. *See* Appellant's Reply Brief [doc. # 23] at 12. CadleRock also argues that Mr. Beaudoin received no consideration at all since he paid off the mortgage on the Corbin Avenue property out of his own funds. However, how much Mr. Beaudoin paid on the mortgage is not clear. At least as of 2001, when Ms. Beaudoin refinanced the Corbin property mortgage, Mr. Beaudoin claims to have made a total of only $10,000 in mortgage payments. *See* Record of Appeal, Ex. 4 (Transcript of Hearing Held on Nov. 29, 2006), at 74:5-8. In addition, Mr. Beaudoin testified that

13

Ms. Beaudoin paid at least $5,000 towards repayment of the mortgage on the Corbin Avenue property. *See id.* at 73:18-20.

A bankruptcy court's finding of adequate consideration is a factual determination, and thus subject to the clearly erroneous standard. *See Klein v. Tabatchnick*, 610 F.2d 1043, 1047 (2d Cir. 1979) ("Fairness of consideration is generally a question of fact."). Furthermore, the adequacy of consideration is subject to a "rough measure," and not the kind of precision on which CadleRock appears to insist. *See In re Fruehauf Trailer Corp.*, 444 F.3d 203, 212-13 (3d Cir. 2006) (stating "reasonably equivalent value" is subject to "rough" measure); *Rosen v. Barclays Bank of N.Y. (In re Barclays)*, 115 B.R. 433 (E.D.N.Y. 1990) (affirming bankruptcy judge's finding in fraudulent conveyance context that $50,000 paid as consideration for release of $500,000 mortgage lien was reasonably equivalent value); *Gonzalez v. Wells Fargo Bank, N.A. (In re Gonzalez)*, 342 B.R. 165, 174 (Bankr. S.D.N.Y. 2006) ("[T]he fair market value received by the debtor need not be a penny for penny exchange, but can be "roughly" the value of the transfer made." (citation omitted)); *In re Euro-Swiss Int'l Corp. v. Trimble, Marshall & Goldman, P.C. (In re Euro-Swiss Int'l Corp.)*, 33 B.R. 872, 885 (Bankr. S.D.N.Y. 1983) ("Reasonably equivalent value requires only a 'full and adequate' consideration, not a penny-for-penny exchange.").

Therefore, CadleRock's burden is a substantial one. However, given that the Court is remanding for the Bankruptcy Court to clarify its opinion on a retained interest and that any such clarification may require further findings regarding the nature of the arrangement between Mr. and Ms. Beaudoin for payment of the mortgage on the Corbin Avenue property and the amount of that debt paid off by Mr. Beaudoin, the Court will exercise its discretion to return the unjust enrichment and constructive trust counts to the Bankruptcy Court as well.

The Court is keenly aware that Mr. and Ms. Beaudoin wish to move on with their lives and put their bankruptcy behind them. Undoubtedly and regrettably, the Court's remand does not further their interests in that regard. However, the issue raised by CadleRock are important, and the Court believes that it is far more appropriate to leave those issues, at least in the first instance, to the Bankruptcy Court, which tried the claims. If there is any further appeal from the Bankruptcy Court's decision on remand, the parties should ask that the appeal be transferred to the undersigned, who will expedite the briefing and consideration of any such appeal.

## V.

The Court VACATES the judgment of the Bankruptcy Court and remands this case for proceedings consistent with this opinion. **The Clerk is directed to enter judgment, remand this matter to the Bankruptcy Court and close this file**.

IT IS SO ORDERED.

/s/   Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: December 19, 2007.**